UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| | | | |
|---|---|---|---|
| Case No. | **CV 17-06376-VAP (PLAx)** | Date | November 14, 2017 |
| Title | ***Alicia Peak v. Progressive Select Insurance Company, et al.*** | | |

Present: The Honorable    VIRGINIA A. PHILLIPS, CHIEF UNITED STATES DISTRICT JUDGE

| Beatrice Herrera | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

(IN CHAMBERS)

**Proceedings:**

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [14] AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS [8]

Pending before the Court are (1) the Motion to Remand filed by Plaintiffs Alicia Peak, as an individual and as guardian ad litem for Dustan Carlos Lugo and Imogen Eloise Lugo, ("Plaintiffs"), (*See* Dkt. No. 14 ("Motion" or "Mot.")); and (2) the Motion to Dismiss filed by Defendants Progressive Select Insurance Company ("Progressive") and Michael Apatov (collectively, "Defendants"), (Dkt. No. 8 ("Motion to Dismiss")). After considering the papers filed in support of and in opposition to the Motion, as well as the arguments advanced at the hearing on November 6, 2017, the Court **GRANTS** Plaintiffs' Motion and **DENIES as moot** Defendants' Motion to Dismiss.

## I. BACKGROUND

Plaintiff Alicia Peak ("Plaintiff") brings this action on behalf of herself and as the mother and guardian ad litem of Plaintiffs Dustan Carlos Lugo and Imogen Eloise Lugo, her young twins. Plaintiffs are residents of the County of Ventura in California. (Dkt. No. 1-1 ("Complaint" or "Compl.") ¶ 1.) Defendant Progressive is incorporated and has its principal place of business in Ohio. (Dkt. No. 1 ("Removal") ¶ 4.) Defendant Apatov is a resident of California. (Compl. ¶ 4.)

On or about September 6, 2016, Plaintiff purchased a policy of automobile liability insurance from Progressive. (Compl. ¶ 11.) The effective policy dates of coverage spanned from October 1, 2016 through April 1, 2017. (Compl. ¶ 11.) Under the policy, Plaintiffs were insured against losses caused by uninsured and/or underinsured motorists, with limits of coverage of $100,000 per person, and $300,000 per occurrence. (Compl. ¶ 14.)

Plaintiff alleges that on October 14, 2016, her vehicle was struck by a loose car tire traveling across the roadway.[1] (Compl. ¶ 15.) At the time of the accident, Plaintiff was pregnant with her twins. (Compl. ¶ 15.) The force of the impact with the tire caused Plaintiff to sustain placental abruption, requiring the emergency delivery of her twins several months prematurely. (Compl. ¶ 15.)

On April 6, 2017, Plaintiff avers she timely notified Progressive of the loss, and the claim was assigned to Defendant Apatov. (Compl. ¶ 16.) Plaintiff alleges that Defendants failed to conduct a prompt, full, and complete investigation of the facts and circumstances giving rise to the claim, chose to ignore facts necessitating coverage, and reached coverage conclusions not supported by the facts. (Compl. ¶ 17.) On May 19, 2017, Defendant Apatov sent Plaintiff's attorney a letter denying coverage on the basis of their determination that Plaintiff's vehicle had collided with a stationary tire in the road. (Removal ¶ 5.)

As a result, on June 15, 2017, Plaintiff filed a Complaint in Los Angeles County Superior Court, alleging three claims for relief: (1) breach of contract, (2) bad faith, and (3) intentional infliction of emotional distress ("IIED"). (*See* Compl. at 1–7.) The first two causes of action are alleged only against Progressive, and the third IIED cause of action is alleged both Defendants. Plaintiff also requested attorneys' fees pursuant to Insurance Code section 1619. (*See* Compl. at 8.) Defendants filed a Notice of Removal on August 8, 2017, invoking this Court's diversity jurisdiction and contending that Defendant Apatov is a sham defendant. (*See* Removal). On September 4, 2017, Defendants filed a Motion to Dismiss Plaintiff's third cause of action for IIED and Plaintiff's attorney

---

[1] Defendants contest Plaintiff's account of the collision and asserts that Plaintiff collided with a stationary tire in the road. (Removal ¶ 5.) This factual disagreement will likely be central to the parties' dispute and is not appropriate for resolution at this stage of the proceedings. At this stage, the Court is confined to the factual allegations contained within the complaint, its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice, and must accept these factual allegations as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 668 (9th Cir. 2001).

fee claim.  (*See* Motion to Dismiss.)  On September 29, 2017, Plaintiffs filed both the instant Motion to Remand, (Mot.), and an opposition to Defendants' Motion to Dismiss, (Dkt. No. 13).[2]  On October 5, 2017, Defendants timely opposed Plaintiffs' Motion, (Dkt. No. 17 ("Opp'n)), and Plaintiffs timely replied on October 23, 2017, (Dkt. No. 20).  A hearing on this Motion was held on November 6, 2017. (Dkt. No. 21.)

## II.  LEGAL STANDARD

### A. Motion to Remand

Under 28 U.S.C. § 1441(a), a defendant may remove a state court action to federal court if the federal court has "original jurisdiction" over the matter.  "The burden of establishing federal jurisdiction is upon the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).  "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ."  28 U.S.C. § 1447(c).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  *Id.*

Federal courts have original "diversity" jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.  28 U.S.C. § 1332(a).  Proper jurisdiction under Section 1332 requires complete diversity of citizenship, so each plaintiff must be diverse from each defendant.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (internal citation omitted).  "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated . . . ."  28 U.S.C. § 1332(c)(1).

## III.  DISCUSSION

### A. Plaintiffs' Motion to Remand

Plaintiffs argue the removal of this action was improper because the Court lacks diversity jurisdiction under 28 U.S.C. § 1332(a).  Specifically, Plaintiffs argue the parties are not completely diverse because Plaintiffs are California

---

[2] The parties filed a joint stipulation for an extension of time for Plaintiffs to file an opposition to Defendants' Motion to Dismiss on September 27, 2017, which the Court approved on October 3, 2017.  (*See* Dkt. Nos. 12, 16.)

residents, and at least one defendant, Apatov, is also a California resident.  (*See* Mot. at 1.)

Defendants do not dispute that Defendant Apatov is a resident of California. Rather, Defendants assert that Defendant Apatov has been fraudulently joined to this action in an effort by Plaintiffs to divest this Court of jurisdiction.  (Removal ¶ 5.)  Consequently, Defendants argue, the Court possesses diversity jurisdiction because the remaining parties to this action – Plaintiffs and Progressive – are citizens of different states.  (Removal ¶¶ 1, 5.)

Removal based on a court's diversity jurisdiction is proper despite the presence of a non-diverse defendant where that defendant is a fraudulently joined or sham defendant.  *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned.  *Kruso v. Int'l Tel. & Tel. Corp*., 872 F.2d 1416, 1426 (9th Cir. 1989).  The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship is disregarded for purposes of diversity jurisdiction, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state . . . ."  *Hamilton Materials, Inc. v. Dow Chemical Co*., 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. Gen. Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987)).  "It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds."  *Ritchey v. Upjohn Drug Co*., 139 F.3d 1313, 1318 (9th Cir. 1998) (internal citation omitted).

Defendants alleging fraudulent joinder must "prove that individuals joined in the action cannot be liable on any theory."  *Ritchey*, 139 F.3d at 1318.  Defendants must prove fraudulent joinder by "clear and convincing evidence."  *Hamilton Materials*, 494 F.3d at 1206 (internal citation omitted).  Thus, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony."  *Morris v. Princess Cruises, Inc*., 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mut. Auto Ins. Co*., 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)).  Since courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor."  *Macey v. Allstate Prop. & Cas. Ins. Co*., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998)).

"If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." *Id.*; *see also Good*, 5 F. Supp. 2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant."). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.,* 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001).

### 1. Applicable State Law

Under California state law, a cause of action for IIED "exists when there is: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Bock v. Hansen*, 225 Cal. App. 4th 215, 232-33 (2014) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009)). "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 233 (internal quotation marks omitted).

Liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* "With respect to the requirement that a plaintiff show severe emotional distress, [the California Court of Appeal] has set a high bar." *Id.* Severe emotional distress is "of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expect to endure it." *Id.* "Moreover, the extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect [her] interests. . . The extreme and outrageous conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Hailey v. Cal. Physicians' Serv.*, 158 Cal. App. 4th 452, 474 (2007) (quoting *McDaniel v. Gile*, 230 Cal. App. 3d 363, 372 (1991)) (emphasis omitted).

IIED claims may be asserted against both the insurer as well as persons other than the insurer, such as a claims supervisor or independent adjuster. In determining whether particular conduct is outrageous within the context of an IIED

claim, courts often took to holdings in earlier cases dealing with particular types of conduct. *Bock*, 225 Cal. App. 4th at 233.

## 2. Analysis

Defendants insist that Plaintiffs "cannot state facts sufficient to establish the 'extreme and outrageous conduct' element of the intentional infliction tort." (Opp'n at 5.) As discussed above, Defendants "must demonstrate that there is *no* possibility the plaintiff will be able to establish a cause of action in [s]tate court." *Good*, 5 F. Supp. 2d at 807 (emphasis added). Plaintiffs contend that "there is at least a possibility that a state court would find that [her] Complaint states a cause of action against [Defendant] Apatov" for IIED. (Mot. at 6.) The Court agrees with Plaintiffs.

Plaintiffs allege that "[i]n denying [her] claim, Apatov purposefully ignored the great bulk of the information with which he had been provided, and he sought only to justify his own predetermined course of denying payments due [sic] Plaintiff under the [p]olicy." (*See* Compl. ¶ 35.) Moreover, Plaintiff asserts that Defendant Apatov denied the claim with knowledge "that Plaintiff had suffered a major life trauma, that Plaintiff was in a frail emotional state, and that denying benefits due to Plaintiff would cause Plaintiff to suffer financial hardship, and further exacerbate the pain, suffering, and emotional distress Plaintiff was already suffering as a result of having to care and pay for medical treatments for her prematurely born children." *Id.* California courts have previously found that similar allegations were sufficient to withstand a motion to dismiss an IIED claim against an insurer's employees. *See, e.g., Hailey*, 158 Cal. App. 4th at 474; *see also Hernandez v. Gen. Adjustment Bureau*, 199 Cal. App. 3d 999, 1007 (1988) (finding the plaintiff sufficiently alleged an IIED claim where the defendant, "knowing her susceptibility to profound mental distress, and of her repeated attempts at suicide, . . . intentionally delayed payments of approved benefits vital to the support of [plaintiff] and her three children.").

In their Opposition, Defendants argue that because Plaintiffs do not specifically allege how Defendant Apatov had knowledge of Plaintiff's susceptibility to emotional distress (i.e., medical records), she is unable to state an IIED claim against him. (Opp'n at 5-7.) Plaintiffs do not need to allege specifically how Defendant Apatov had this knowledge; Plaintiffs' allegation that Defendant Apaptov was aware that Plaintiff had suffered a major life trauma and was in an emotionally fragile state is sufficient. Additionally, Plaintiff's fragile emotional state could be reasonably inferred following her placental abruption that led to the twins' significantly premature delivery.

Defendants also argue that Plaintiffs' allegations fail because they do not allege specific financial hardship. (Opp'n at 5-7.) Evidence of financial harm, general or specific, is not an essential element of an IIED claim, nor is it required to establish that a defendant's behavior is outrageous. *See Bock*, 225 Cal. App. 4th at 232-33; *Hailey*, 158 Cal. App. 4th at 473-74; Cal. Jury Instr. BAJI No. 12.70 (2017). The court's discussion of the defendant's outrageous conduct in *Hailey*, a case which Defendants rely upon, indicates that specific financial hardship is treated as a contributing factor to establishing the plaintiff's emotional distress; it is not, however, necessarily a prerequisite to an IIED claim. *Hailey*, 158 Cal. App. 4th at 474-76. The other cases cited by Defendants similarly treat the plaintiff's financial hardship as a factor in establishing the plaintiff's susceptibility to emotional distress, or the defendant's knowledge of plaintiff's financial hardship as a factor in establishing why the defendant's conduct was outrageous. *See Little v. Stuyvesant Life Ins. Co.*, 67 Cal. App. 3d 451, 462-63 (1977); *Younan v. Equifax, Inc.*, 111 Cal. App. 3d 498, 515 (1980); *Hernandez*, 199 Cal. App. 3d at 1007. Plaintiffs' claim therefore does not fail for not alleging specific financial hardship.

While this Court finds Plaintiffs' Complaint adequately alleges an IIED claim against Defendant Apatov as it stands, in the event a state court deemed the factual allegations insufficient, Plaintiffs could likely amend her Complaint to cure factual deficiencies. *See Bock*, 225 Cal. App. 4th at 235-36 ("we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment[]"). The Court also notes that the operative Complaint is Plaintiffs' originally filed Complaint.

For the reasons above, the Court finds that Defendants failed to show by clear and convincing evidence that Platiniffs cannot possibly state a claim under state law against Defendant Apatov. The Court therefore cannot deem Defendant Apatov a sham defendant, and there is not complete diversity between the parties. Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand this action for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is **GRANTED**, and Defendants' Motion to Dismiss is **DENIED as moot**. This action is remanded back to the Los Angeles County Superior Court.

**IT IS SO ORDERED.**